UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEVEN WALKER,

            Plaintiff,

v.                                                                                          9:04-CV-1011
                                                                                            (DNH/GHL)
J. MCCOY, Superintendent; D. DELFAVERO,
Nurse Administrator; DOCTOR TRABOUT;
PATRICK BUTTARAZZI; and LESTER N.
WRIGHT, Associate Commissioner,

            Defendants.
_____

APPEARANCES:                                                OF COUNSEL:

STEVEN WALKER
  Plaintiff, *Pro Se*
1419 Jesup Avenue, Apt. 4D
Bronx, NY 10452

HON. ANDREW M. CUOMO                                        MARIA MORAN, ESQ.
New York State Attorney General                             Assistant Attorney General
  Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204-2455

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

This action has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Generally, in this *pro se* civil rights complaint brought under 42 U.S.C. § 1983, Steven Walker ("Plaintiff") alleges that, while he was incarcerated at Cayuga Correctional Facility ("Cayuga C.F.") between August 20, 2001, and August 20, 2004, five employees of the New York State Department of Correctional Services

("DOCS")–Cayuga C.F. Superintendent Joseph E. McCoy, Cayuga C.F. Nurse Administrator David DelFavero, Cayuga C.F. Physician Marshall Trabout, Cayuga C.F. Physician Patrick Buttarazzi, and DOCS Associate Commissioner Lester N. Wright ("Defendants")--violated Plaintiff's rights under the Eighth Amendment by being deliberately indifferent to his serious medical needs resulting from a degenerative spinal condition known as "cervical myelopathy." (Dkt. No. 1 [Plf.'s Compl.].)[1]  Currently before the Court is Defendants' motion for summary judgment.  (Dkt. No. 36 [Defs.' Motion].)  Although being specifically advised of the potential consequences of failing to file papers in opposition to Defendants' motion (Dkt. No. 36, Part 1 [Notice to Plf. pursuant to N.D.L.R. 56.2]), and being given an extension of time in which to do so (Dkt. No. 37 [Order granting Plf.'s extension request]), Plaintiff has failed to file papers in opposition to Defendants' motion.  For the reasons discussed below, I recommend that Defendants' motion be granted.

**I.   RELEVANT LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "When a motion for summary judgment is made [by a defendant] and supported as provided in this rule,

---

[1] I note that, to the extent Plaintiff's Complaint asserts claims arising from events occurring *before* August 20, 2001, Judge Hurd, by Order dated November 23, 2004, ruled that those claims were barred by the three-year statute of limitations applicable for Section 1983 actions arising in New York.  (Dkt. No. 4 at 2 [Order of Judge Hurd, filed 11/23/04].)  As a result, this Report-Recommendation does not address those claims, other than to note that they are barred by the aforementioned limitations period.

the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]." Fed. R. Civ. P. 56(e).

What this means is that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he fact that there has been no response to a summary judgment motion does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, practically speaking, the Court must (1) determine what material facts, if any, are undisputed in the record, and (2) assure itself that, based on those undisputed material facts, the law indeed warrants judgment for the defendants. *See Champion*, 76 F.3d at 486 ("Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that . . . the moving party is entitled to a judgment as a matter of law.") [internal quotation marks and citation omitted]; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (stating that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he Court must review the merits of Plaintiff's claims") (Scullin, C.J.).[2]

Finally, it bears noting that, under Local Rule 7.1(a)(3), where a plaintiff has failed to respond to a defendant's statements of material fact contained in its Rule 7.1 Statement, the facts

---

[2]    This requirement (that the Court determine, as a threshold matter, that the movant's motion has merit) is also recognized by Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, which provides that "the non-moving party's failure to file or serve . . . [opposition] papers . . . shall be deemed as consent to the granting . . . of the motion . . . unless good cause is shown," *only where the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein."*  N.D.N.Y. L.R. 7.1(b)(3) [emphasis added].

as set forth in that Rule 7.1 Statement will be accepted as true[3] *to the extent those facts are supported by the evidence in the record,*[4] which evidence shall include any verified complaint filed by the plaintiff, since such a verified pleading has the effect of an affidavit for purposes of a summary judgment motion.[5]

---

[3] *See* Local Rule 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.").

[4] *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . . If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted]; *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added]; *Adirondack Cycle & Marine, Inc. v. American Honda Motor Co., Inc.*, 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) ("Local Rule 7.1 requires a party opposing summary judgment to respond to the statement of undisputed material facts submitted by the movant.  To the extent such facts are not controverted, *the properly supported facts* will be taken as true.") [emphasis added; citation omitted]; *cf.* Fed. R. Civ. P. 83(a)(1) ("A local rule shall be consistent with . . . Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075 [which include the Federal Rules of Civil Procedure] . . . ."); Fed. R. Civ. P. 56(e) (requiring that, "if the non-movant does not . . . respond [to a summary judgment motion], summary judgment, *if appropriate*, shall be entered against the non-movant," and requiring that, as a threshold matter, the motion for summary judgment must be "made *and supported* as provided in this rule") [emphasis added].

[5] *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") (citations omitted), *accord*, *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001).

## II.     ANALYSIS

After carefully considering Defendants' Rule 7.1 Statement (Dkt. No. 36, Part 2), the evidence in the record (Dkt. No. 36, Parts 4, 5, 6, 8, 9), including Plaintiff's verified Complaint (Dkt. No. 1), and Defendants' Memorandum of Law (Dkt. No. 35, Part 3), and after resolving all ambiguities and drawing all reasonable inferences in favor of Plaintiff, I conclude that Defendants have met their burden of showing that there is no genuine dispute of material fact and that they are entitled to a judgment as a matter of law.  *See, e.g., Robinson v. Delgado*, 96-CV-0169, 1998 U.S. Dist. LEXIS 7913, at *2 (N.D.N.Y. Apr. 16, 1998) (Hurd, M.J.) (recommending summary judgment after considering notice of motion, attorney affidavit and exhibits, memorandum of law, and fact that plaintiff did not oppose motion), *adopted by* 1998 U.S. Dist. LEXIS 7903 (N.D.N.Y. May 22, 1998) (Pooler, J.); *accord*, *Cotto v. Senkowski*, 95-CV-1733, 1997 U.S. Dist. LEXIS 16463, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.), *adopted by* 1997 U.S. Dist. LEXIS 16462 (N.D.N.Y. Oct. 23, 1997) (Pooler, J.).[6]

More specifically, the sole claim asserted by Plaintiff's Complaint is an Eighth Amendment claim for deliberate indifference to his serious medical needs.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  Defendants correctly recite the legal standard governing such claims as

---

[6]     I note that Plaintiff received notice that his failure to file any opposition papers may result in dismissal of his case, as required by Local Rule 56.2 of the Local Rules of Practice for this Court, and *Champion*, 76 F.3d at 486.  (Dkt. No. 36, Part 1 [Notice to Plf. pursuant to N.D.L.R. 56.2].)  Moreover, I note that Plaintiff–who is no stranger to the federal court system–had apparently read this notice, since he subsequently requested (and was granted) an extension of time in which to respond to Defendants' motion.  (Dkt. No. 37 [Order of 3/9/07 granting Plaintiff's extension request].)  *See also Walker v. Goord*, 01-CV-1134 (N.D.N.Y.) (TJM) (prisoner civil rights action); *Walker v. Mitchell*, 93-CV-5998 (S.D.N.Y.) (habeas corpus proceeding); *Walker v. Scully*, 90-CV-5770 (S.D.N.Y.) (habeas corpus proceeding); *Walker v. Scully*, 90-CV-3328 (E.D.N.Y.) (habeas corpus proceeding).

involving two prongs: (1) a determination of whether Plaintiff had a *sufficiently serious* medical need; and (2) a determination of whether Defendants were *deliberately indifferent* to that serious medical need. (Dkt. No. 36, Part 3, at 8-10 [Defs.' Mem. of Law].) *See also Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Here, Defendants do not dispute that Plaintiff's spinal condition (known as "cervical myelopathy") was a serious medical need. (Dkt. No. 36, Part 3, at 11 [Defs.' Mem. of Law].) As a result, I will assume, for purposes of Defendants' motion for summary judgment, that Plaintiff's spinal condition was in fact a serious medical need. Rather, Defendants argue that no record evidence exists indicating that Defendants were *deliberately indifferent* to that serious medical need. (Dkt. No. 36, Part 3, at 7-14 [Defs.' Mem. of Law].)

An analysis of Defendants' argument properly begins with the recognition that the term "deliberate indifference" refers to a state of mind that is equivalent to *criminal recklessness*.[7] Mere *negligence* by a DOCS employee is not sufficient for a prisoner to state a claim under the Eighth Amendment.[8] For this reason, a prisoner's *disagreement* with a DOCS employee regarding the treatment that he should properly receive is insufficient to state a claim under the Eighth Amendment.[9] As the Second Circuit has explained,

---

[7]  *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998).

[8]  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

[9]  *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

> It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls. [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff[] understandably seeks . . . . We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution. . . . The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . . . The essential test is one of medical necessity and not one simply of desirability.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations omitted].

Here, it is clear from Plaintiff's medical records that, between August 20, 2001, and August 20, 2004, he was seen more than 60 times by health care providers (inside and outside of Cayuga C.F.) for various medical conditions (mostly his spinal condition)–14 of those times by Defendant Trabout, and once by Plaintiff's physical therapist (apparently named "T. Mutanga").[10] Moreover, it is clear that, during that time period, Plaintiff received on numerous occasions prescribed medications (including the muscle relaxants "Flexeril" and "Baclofen").[11] I can find no evidence (or even an allegation) that Plaintiff was denied medication or visits by medical care providers after submitting a request for such medication or visits, during the time in question.[12] Rather, Plaintiff alleges that, during the time in question, Defendants denied him the physical

---

[10]  (*See generally* Dkt. No. 36, Part 8, Ex. B, at 4-44 [Moran Affirm., attaching Plf.'s medical records]; Dkt. No. 36, Part 5, ¶¶ 7-24 [Trabout Decl.].)

[11]  (*See generally* Dkt. No. 36, Part 8, Ex. B, at 4-44 [Moran Affirm., attaching Plf.'s medical records].)

[12]  (*Id.*; *see also* Dkt. No. 1 [Plf.'s Compl.].)

7

therapy that he required.[13]

Defendants essentially concede that, during the time in question, Plaintiff did not receive the extent or nature of physical therapy that he would have liked.[14] However, Defendants argue, and have adduced evidence establishing, that the extent of physical therapy that Plaintiff received during the time in question was due entirely to two factors: (1) the medical opinion of Plaintiff's physical therapist, on November 19, 2001, that Plaintiff was "currently @ max. potential" with regard to the possible benefits from his physical therapy, and that he should just continue with his prescribed home maintenance program[15] (i.e., the program that Plaintiff had been prescribed *by the same physical therapist* on June 15, 2001);[16] and (2) decisions by Plaintiff to not pursue the physical therapy that was available to him.[17] Plaintiff has failed to rebut this evidence, offering

---

[13]   (*See generally* Dkt. No. 1, ¶ 7 & "Facts" at 1-2 [Plf.'s Compl.].)

[14]   (*See generally* Dkt. No. 36, Part 3, at 3-6, 11 [Plf.'s Mem. of Law].)

[15]   (*See*, *e.g.,* Dkt. No. 36, Part 5, ¶¶ 11, 28 [Trabout Decl.]; Dkt. No. 36, Part 8, Ex. B at 17  [Moran Affirm., attaching Consultant's Report, dated 11/19/01].)

[16]   (*Compare* Dkt. No. 36, Part 8, Ex. B at 17  [Moran Affirm., attaching Consultant Report, apparently signed "T. Mutanga PT," on 11/19/01, at Walsh Regional Medical Unit] with Dkt. No. 36, Part 8, Ex. B at 3 [Moral Affirm., attaching Consultant Report, apparently signed "T. Mutanga PT," on 6/15/01, at Walsh Regional Medical Unit].)

[17]   For example, although Plaintiff was scheduled for physical therapy appointment on October 16, 2001, he refused to attend that appointment. (Dkt. No. 36, Part 5, ¶ 10 [Trabout Decl.]; Dkt. No. 36, Part 4, ¶ 10 [DelFavero Aff.]; Dkt. No. 36, Part 8, Ex. B at 15 [Moran Affirm., attaching Refusal of Medical Examination and/or Treatment, signed by Plf. on 10/16/01].)  Moreover, on or about November 19, 2001, Defendant Trabout requested and received approval for Plaintiff to be transported from Cayuga C.F. to the Walsh Regional Medical Unit to see his physical therapist there on an out-patient basis. (Dkt. No. 36, Part 5, ¶¶ 11, 28 [Trabout Decl.].)  However, Plaintiff refused to attend those sessions, stating, on or before August 13, 2002, that he did not like being shackled during the transport between the two facilities.  (Dkt. No. 36, Part 5, ¶¶ 15, 28 [Trabout Decl.]; Dkt. No. 36, Part 8, Ex. B at 25 [Moran Affirm., attaching Plf.'s Ambulatory Health Record, dated 8/13/02].)

(through his verified Complaint) only a sworn assertion that, in 1997 and/or 1998, a neurosurgeon (Dr. S. Henson) had "recommended" that Plaintiff receive physical therapy two or three times per week, and that, during the time in question, Plaintiff was not in fact receiving that therapy.[18] This sworn assertion (even if it is accepted as an uncontroverted fact) fails to address the thrust of Defendants' evidence–which is that, in the opinion of Plaintiff's physical therapist, Plaintiff had exhausted the benefits of the sort of *out-patient* physical therapy initially recommended by Dr. Henson, and that the sole type of physical therapy that remained available to Plaintiff was therapy that he had to do by himself (as part of a "home maintenance program").

Simply stated, at the heart of Plaintiff's Eighth Amendment claim is a disagreement over the treatment that he should have properly received for his spinal condition. As explained above, such a disagreement is not actionable under Section 1983.[19] I note that it appears extremely doubtful to me that the treatment that Plaintiff received for his spinal condition would give rise even to a claim of ordinary negligence.

For these reasons, I recommend that the Court grant Defendants' motion for summary judgment. Because I find that no record evidence exists that any Eighth Amendment violation occurred, I need not and do not reach the merits of Defendants' alternative argument that Plaintiff

---

[18]   (Dkt. No. 1, ¶ 7 & "Facts" at 1-2 [Plf.'s Compl.]; *see also* Dkt. No. 36, Part 8, Ex. B at 1 [Moran Affirm., attaching Consultant Report, signed by S. Henson, M.D., on 5/15/97].)

[19]   *See Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *see also Veloz v. New York*, 339 F. Supp. 2d 505, 522-24 (S.D.N.Y. 2004) (granting defendants' motion for summary judgment on plaintiff's claim for deliberate indifference because defendants denied plaintiff's request for a stronger pain medication to treat his back condition based on a mere disagreement as to treatment, and medical malpractice is not actionable under the Eighth Amendment).

9

has failed to allege and/or adduce any evidence indicating that Defendants McCoy, DelFavero, Buttarazzi and Wright (who were all supervisory officials) were personally involved in the Eighth Amendment violations alleged.  (Dkt. No. 36, Part 3, at 12-14 [Defs.' Mem. of Law].)

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 36) be <u>**GRANTED**</u>.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 16, 2007
      Syracuse, New York

                                      George H. Lowe
                                      United States Magistrate Judge